UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER VANARNAM,                    Case No. 12-14397

           Plaintiff,                    Gershwin A. Drain
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Michael Hluchaniuk
                                         United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 19)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On October 4, 2012, plaintiff Christopher Vanarnam filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Gershwin A. Drain referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt.

3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

16, 19).

**B.      Administrative Proceedings**

Plaintiff filed the instant claim for disability and disability insurance

benefits on April 10, 2011, alleging disability beginning December 29, 1999.

(Dkt. 11-5, Pg ID 256-57).  Plaintiff's claim was initially disapproved by the

Commissioner on June 20, 2011.  (Dkt. 11-3, Pg ID 141).  Plaintiff requested a

hearing and on January 10, 2012, plaintiff appeared, with counsel, before

Administrative Law Judge ("ALJ") Donald G. D'Amato, who considered the case

de novo.  (Dkt. 11-2, Pg ID 90-127).  In a decision dated February 2, 2012, the

ALJ found that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 48-70).  Plaintiff

requested a review of this decision on February 21, 2012.  (Dkt. 11-2, Pg ID 45).

The ALJ's decision became the final decision of the Commissioner when the

Appeals Council, on August 15, 2012, denied plaintiff's request for review.  (Dkt.

11-2, Pg ID 38-40); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1974 and was 25 years of age on the alleged disability onset date and 31 years old on the date last insured, December 31, 2005.  (Dkt. 11-2, Pg ID 68; Dkt. 11-3, Pg ID 131).  Plaintiff's past relevant work history includes work as a mess cook.  (Dkt. 11-2, Pg ID 68).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 29, 1999 through his date last insured of December 31, 2005.  (Dkt. 11-2, Pg ID 53-54).[1]  At step two, the ALJ found that, through the date last insured, plaintiff had the following severe impairments:

> degenerative disc disease of the lumbar spine at L5-S1
> with possible mild focal herniation with intermittent
> right L5-S1 radicular symptomology and sacroiliac joint
> dysfunction; obesity; history of right knee patellofemoral
> pain syndrome with possible meniscal tear; residuals of
> right acromioclavicular joint dislocation; history of
> tinnitus; history of right inguinal hernia; adjustment
> disorder with depressed mood; major depressive

---

[1]The ALJ noted that plaintiff reported that he worked in computer repairs and sales from May 2001 to September 2003, and that he worked as a cook from January to April 2000, and that plaintiff reported monthly earnings in both jobs which exceeded the monthly SGA thresholds for the periods in question.  The ALJ stated that these facts would be sufficient to support a finding that plaintiff was not disabled during those time periods.  However, because plaintiff reported his work as a cook was an unsuccessful work attempt, and because plaintiff's income for the work from 2001 to 2003 was based on plaintiff's self-reported income, which may or may not be entirely accurate, the ALJ continued with the disability analysis as if there were no SGA earnings.  (Dkt. 11-2, Pg ID 53-54, citing Tr. 444, 461, 468, 475, 477).

> disorder; generalized anxiety disorder; personality
> disorder with paranoid features; history of head injury
> and status post right ulnar fracture (1998); history of
> possible dislocated left shoulder per claimant and a
> history of left ankle, bilateral knee, right index finger,
> left wrist and bilateral shoulder injuries in the 1990's,
> history of dislocated right thumb (1996), broken fifth
> metacarpal, right hand (1997) and broken right arm
> (1998), per claimant.

(Dkt. 11-2, Pg ID 54). At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 11-2, Pg ID 54-56). The ALJ determined that plaintiff has the following

residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant required
> work which was simple and unskilled with one, two or
> three-step instructions; he could only occasionally work
> in close proximity to co-workers and supervisors (but
> could not function as a member of a team); he was
> limited to less than occasional direct contact with the
> public, in a "low stress"environment, defined as having
> only occasional changes in the work setting; he had
> tinnitus, but could hear conversational level tone up to
> ten feet away; he could lift and/or carry up to ten pounds
> frequently and twenty pounds occasionally; he could
> stand and/or walk (with normal breaks) for a total of up
> to four hours in an eight-hour workday, but could [do] so
> for only fifteen minutes at one time; he could sit (with
> normal breaks) for a total of up to six hours in an eight-
> hour workday, but could [do] so for only fifteen minutes
> at one time; he could perform pushing and pulling
> motions with the upper and lower extremities within the
> aforementioned weight restrictions for two-thirds of an
> eight-hour workday; he could perform activities
> requiring bilateral manual dexterity for both gross and

4

> fine manipulation with handling and reaching for two-
> thirds of an eight-hour workday; he needed to avoid
> hazards in the workplace, such as moving machinery and
> unprotected heights; he needed to be restricted to a
> "relatively clean" work environment, meaning stable
> temperatures, stable humidity and good ventilation that
> allowed the claimant to avoid concentrated exposure to
> dusts, fumes, gases, odors and other pulmonary irritants;
> he could occasionally climb stairs with handrails,
> balance stoop, crouch, kneel or crawl and he needed to
> avoid climbing ladders, scaffolds and ropes.

(Dkt. 11-2, Pg ID 56-68).

At step four, the ALJ found that plaintiff was unable to perform his past relevant work, which was precluded by the ALJ's RFC. (Dkt. 11-2, Pg ID 68, 119). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 11-2, Pg ID 68-70).

## B.   Plaintiff's Claims of Error

Plaintiff assigned several claims of error to the ALJ's finding that plaintiff was not disabled prior to his date last insured. Plaintiff argues that, despite making his Step One finding that plaintiff had not engaged in substantial gainful activity since his asserted onset date of December 29, 1999, the ALJ spent a great deal of time in his decision outlining his perceptions of the plaintiff having worked for some consistent periods of time. Plaintiff contends that the ALJ appears to have taken most of this information from plaintiff's statements

5

throughout the record, which, plaintiff argues, involved an individual who had experienced a head injury, and whose memory was impaired, at least with regard to his employment, given the various inconsistencies between the Disability Report(s), Work Activity Report, hearing testimony and the actual earnings reported and documented in the record. Nonetheless, the ALJ stated that the "remainder" of his decision would deal with the entire period, "from the alleged onset of disability through the date last insured," as if there were no SGA earnings. (Tr. 17). Plaintiff argues that while it may be true that the ALJ defined how he would review the evidence, it is clear from the ALJ's further analysis of plaintiff's credibility, and other concerns, that the ALJ's opinion was colored by his own perception that plaintiff worked much more than the record objectively reflected. Plaintiff asserts that this was prejudicial, and that the ALJ lacked substantial evidence for his assumptions concerning plaintiff's past employment(s).

Plaintiff next argues that the ALJ erred at Step Three of the sequential analysis when he found that plaintiff did not meet or equal a Listing singly or in combination with other impairments. (Tr. 17). Plaintiff contends that although the ALJ stated that he reviewed Listed Impairments 1.02, 1.04, 2.08, 12.04 and 12.06, along with "obesity," the ALJ's analysis was incorrect, and the impairments were not looked at in combination. Plaintiff posits that his mental impairments

6

meet and/or equal Listed Impairments 12.04 and/or 12.06.  Specifically, plaintiff

asserts that his testimony and the record evidence shows that he satisfied the

paragraph B requirements for both Listing 12.04 and 12.06, in that he had

"marked" restriction of activities of daily living, "marked" difficulties in

maintaining social functioning, and "marked" difficulties in maintaining

concentration, persistence or pace.  (Tr. 70, 72, 75-76, 719, 723-24, 736-37, 739-

40, 1892, 1895).  Further, with regard to Listed Impairment §12.06(A), plaintiff

asserts that his condition satisfies the following, pre-DLI: (1) generalized

persistent anxiety accompanied by: a. motor tension; c. apprehensive expectations;

and, d. vigilance and scanning (Tr. 71, 73-74, 75-76, 719, 729, 735, 736, 738, 739,

740, 1892, 1895); and (5) recurrent and intrusive recollections of a traumatic

experience, which are a source of marked distress (Tr. 719).

     Plaintiff argues that the ALJ found that Part B of Listing 12.04 was not met.

Specifically, he found that there were only mild restrictions with activities of daily

living primarily because plaintiff "was able to work at several jobs and was able to

assist in raising two young sons."  (Tr. 18).  Plaintiff argues, however, that the

earnings records do not reflect substantial gainful activity.  Plaintiff asserts that his

various work experiences were considered "Unsuccessful Work Attempts" by

Department of Disability Services (DDS), when it first evaluated plaintiff's work

activity for the period after December 1999. The DDS explanation that "[Plaintiff]

had a 'break in the continuity of work' and this work was determined to be an

unsuccessful work attempt because it was discontinued or reduced to a non-SGA

level after three months but less than six months due to the impairment …

unsatisfactory work performance because of the impairment." (Tr. 94). Plaintiff

contends that he did have spurts of "motivation" to attempt work, but then was

unable to maintain the same, as described on his Work Activity Report. (Tr. 454-

55, 461-62).

Regarding social functioning, the ALJ determined that plaintiff had

"moderate difficulties" because plaintiff had "lived with his wife and two children

for the entire period from December 1999 through December 2005." Plaintiff

contends, however, that it is unclear how this fact would disprove problems with

"social functioning." Further, the ALJ also cited a description of plaintiff when

being interviewed by "treating professionals" as being "polite and cooperative,"

"pleasant" and "calm and affable." (Tr. 18). Plaintiff argues that this also is a red

herring, as an individual can have problems with social functioning, while still

being polite and pleasant when being interviewed in a formal medical setting.

Additionally, the ALJ found plaintiff to have only "moderate difficulties" with

social functioning because plaintiff's "anger" appears to have been related to

"stresses as a result of pressure to work and feelings of inadequacy due to his

inability to support his family rather than being directly attributable to any clinical

8

impairment." (Tr. 18). Plaintiff submits that it does not matter what the "anger" would be attributable to. Rather, plaintiff argues, the fact that it existed, and caused social functioning problems, meets the intent of what needs to be evaluated in the above listed impairments.

Plaintiff asserts that evidence shows that he is unable to get along with coworkers and/or supervisors, and was fired when he could not acclimate to a variety of different work situations. In fact, plaintiff continues, before he was discharged from the Army, he was "busted from" the rank of "E4 to E3." (Tr. 721). Plaintiff asserts that he "tried to re-enlist," but "they wouldn't let me." (Tr. 872). Plaintiff contends that it must be remembered that he was documented as having had a head injury with loss of consciousness (Tr. 740), and that this was before his date last insured. Additionally, plaintiff noted that he had "short term memory loss" when he had his psychiatric intake interview at the VAMC on July 21, 2005, which he questioned as possibly being from medication that he took. (Tr. 729). Finally, plaintiff points out that a recommendation that he undergo a neuropsychological evaluation was made as early as March 2001. (Tr. 757). Plaintiff asserts that this occurred after he fell "backwards on ice hitting" the "posterior head." (Tr. 756).

The last "B" criteria addressed by the ALJ was "concentration, persistence or pace," with which the ALJ felt the plaintiff had "moderate difficulties."

9

Plaintiff asserts that two of the reasons given by the ALJ for this conclusion

involve the fact that in 2011, when completing a Function Report, the plaintiff

answered the question concerning how long he can pay attention with "as long as I

want." (Tr. 18). The second reason is the ALJ's perception that plaintiff was able

to "attend college with no reported difficulties related to concentration, persistence

and pace" gleaned from "testimony." (Tr. 18). Plaintiff argues first, regarding the

"paying attention" answer; that this is certainly not dispositive of someone stating

that he has good "concentration, attention, etc.," and, remembering plaintiff's

possible memory problems, head injury, residuals of his PTSD, etc., perhaps a

better assessment of plaintiff's abilities in those areas are described by plaintiff's

wife who, when completing her "Third Party Function Report," indicated that

plaintiff "needs help remembering appointments and tasks to do," and that she

dispenses "all medicine to him per doctors' orders." (Tr. 488). She further stated

that he "can pay attention for a few minutes." (Tr. 491). And, the ALJ's

"assumption" that plaintiff was able to attend college with no reported difficulties

related to these issues is contradicted by the evidence. First, plaintiff's vocational

rehabilitation counselor at the VA reports that within nine months of his date last

insured, after having started school at Schoolcraft Community College, plaintiff

"fell behind in school work." She further documented that plaintiff had found it to

be "difficult to concentrate," and that this problem was "a consistent finding over

the course of the next four years." (Tr. 529). Plaintiff continues that although he told a physical therapist in April 2010 that he was "going to school full time for computer science" (Tr. 1156), in May 2008, when he was undergoing his PTSD evaluation, plaintiff informed the examiner that "he used to go to Schoolcraft College in Livonia" but said that he stopped going because "I couldn't handle being around people talking about the war (in Iraq)," after which "he decided to go to school on line instead."

Plaintiff asserts that when reviewing whether an individual meets a listed impairment, all of an individual's medical conditions must be taken in combination, and where one disability may not be found to "meet" the exact requirements of a Listing, if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairment, then the impairment should be considered medically equivalent to a listed impairment. *Ridge v. Barnhart*, 232 F. Supp.2d 775, 788 (N.D. Ohio 2002) (citing *Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam)). Plaintiff argues that because his impairments, both mental and physical, in combination equal a Listed Impairment under 20 C.F.R., Part 404, Sup Part P, Appendix 1, the inquiry should have ended without proceeding to subsequent steps, and thus substantial evidence does not exist to support the ALJ's finding that a Listed Impairment is not met and/or equaled.

11

Plaintiff next claims that the ALJ erred in finding that plaintiff's testimony was not totally credible.  The ALJ found "the claimant's medically-determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment.  (Tr. 22). Plaintiff contends that the ALJ here, as in *Calhoun v. Commissioner of Social Security*, 338 F. Supp.2d 765 (E.D. Mich. 2004), erred in his credibility determination because his assessment of the plaintiff's "subjective complaints … w[as] based on an inaccurate analysis of the record," *id.* at 774, and thus is not supported by substantial evidence.  Plaintiff argues that it was inconsistent for the ALJ to, on the one hand, discredit plaintiff's statements when made in 2011 concerning what he recollected as his functional problems prior to his date last insured, stating that "it is difficult for him to remember what his pain and other symptoms were like in 2005" (Tr. 21), while at the same time crediting plaintiff with accuracy for the jobs he described at various times, which may or may not have actually been done, given plaintiff's difficulties with his memory.   Plaintiff asserts that the medical record prior to his date last insured in 2005 provides ample documentation of his difficult childhood, difficulties in the service which included a plethora of injuries, suicide attempts, and difficulties in holding down a job

12

and/or completing a course of education/vocational rehabilitation.  Plaintiff asserts that the ALJ addressed the fact that there is "no evidence of any treatment for any mental impairment between the time of discharge from the military in December 1999 and May 2005" (Tr. 24), which plaintiff concedes is accurate (and accordingly states that he would be willing to change his onset date to a date in 2005, if that would assist him in getting benefits).  Plaintiff asserts the ALJ then found fault with plaintiff not having followed through with prescribed psychiatric treatment after his 2005 assessments.  (Tr. 24).  Plaintiff argues, however, given the nature of his impairments, and his possible lack of judgment in regard to his need for treatment, other than treatment for his physical problems, that this is not unusual.  According to plaintiff, the Sixth Circuit has addressed the issue of non-compliance by psychiatric patients, with respect to claimants who may fail to seek psychiatric treatment for their mental condition, stating "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking out treatment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Plaintiff finally claims that the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence.  The ALJ found claimant capable of a limited range of light work.  One of the limitations given by the ALJ included the requirement for plaintiff to be able to alternate his position by standing and/or

walking "for only fifteen minutes at one time;" as well as sitting "for only fifteen minutes at one time." (Tr. 19-20). Plaintiff contends that the ALJ seems to have gotten this "fifteen minute" time span from the claimant's testimony at the hearing, where he said he could not sit for more than fifteen minutes, nor stand for more than fifteen minutes. (Tr. 65-66). Plaintiff argues, however, that the ALJ did not incorporate the rest of plaintiff's testimony that he then has to "go and lay down, take the pressure off. . . ." (Tr. 66). According to plaintiff, this same "fifteen minute" standing limitation was also noted in August 2005 at the VAMC, with plaintiff then also telling the doctor that he needed to lie down to address his pain. (Tr. 724). Plaintiff contends that there does not appear to be another source for these parameters, and it is unclear why the ALJ chose to pick the "functional" capability, while declining to add the further limitation of plaintiff needing to lie down intermittently between those activities. Plaintiff further argues that it is significant that the ALJ gave "significant weight" to the opinion of Dr. Edmunds, who works for the State Agency, and who did not examine or treat plaintiff. (Tr. 30). Plaintiff asserts that the ALJ gave significant weight to Dr. Edmunds' opinion "because he [the doctor] was able to review the claimant's entire medical record. . . ." (Tr. 30). Plaintiff argues that this statement is incorrect, as the hearing transcript demonstrates. Specifically, the hearing transcript documented the following exchange between the ALJ and plaintiff's counsel regarding the

volume of newly submitted evidence that was filed one day earlier:

> E.G.: I don't know if you got the letter that I sent - -
>
> ALJ: - - Right, and I have the brief. It's just that there were so many documents, and I was a little surprised.
>
> E.G.: - - I understand, and I tried to put together this case chronology. However, just so Your Honor knows, like, basically 2010 is I think the one with the 777 pages, was not thoroughly done, but everything prior to that - - .

(Tr. 56). Plaintiff asserts that while it had to be difficult for the ALJ to receive such a volume of evidence just prior to the hearing, it is without question that Dr. Edmunds did not have "the claimant's entire medical record" from which to formulate an opinion, as his opinion appeared prior to the plaintiff's initial Social Security denial, on June 20, 2011. (Tr. 93-98). Plaintiff concludes therefore that the ALJ lacked substantial evidence to rely on the opinion of the DDS doctor who did not have the benefit of being able to review all of the medical records that are now contained in the administrative file.

Plaintiff therefore requests that this Court reverse the agency's decision denying his disability insurance benefits, or, in the alternative, remand the case for further reconsideration.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably evaluated plaintiff's mental impairments under the paragraph B criteria. At step two of the sequential

15

evaluation, the ALJ found that plaintiff had several physical and mental impairments that significantly affected his ability to perform basic work activities. (Tr. 17).  With respect to plaintiff's mental problems, the ALJ found that plaintiff had adjustment disorder with depressed mood, major depressive disorder, generalized anxiety disorder, and personality disorder with paranoid features.  (Tr. 17).  At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or medically equal the criteria of one of the impairments in the Listings.  (Tr. 17-18).  In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied.  The Commissioner contends that the ALJ reasonably found that plaintiff had mild limitations on his activities of daily living.  (Tr. 18).  The Commissioner asserts that plaintiff completed a questionnaire concerning his ability to perform many of these activities.  (Tr. 502-09).  He reported that he could care for himself (except that he needed reminders to take medication), prepare simple meals, do some chores such as the dishes and light vacuuming, shop, help assist in caring for his children and pets, pay bills, and handle a savings account.  (Tr. 503-05).  The Commissioner contends that plaintiff's ability to perform these activities fails to demonstrate more than mild limitations.  Although plaintiff testified that, prior to December 2005, he spent most of his time either lying in bed or watching television, the ALJ found that these allegations were not fully credible because plaintiff had regular

16

work activity over extended periods and the record did not include objective findings or medical opinions to support this degree of isolation and depression. (Tr. 18). The ALJ also pointed out that plaintiff was able to assist in raising two young sons. (Tr. 18). The ALJ acknowledged that plaintiff had frequent outbursts in May 2005, but noted that they were at least partially attributable to a recent job loss. (Tr. 18, citing Tr. 733). The Commissioner argues therefore that the ALJ reasonably found mild limitations on plaintiff's activities of daily living.

With respect to social functioning, the ALJ found that plaintiff had moderate difficulties. (Tr. 18). The Commissioner argues that although plaintiff reported difficulties with isolation (Tr. 70), the ALJ properly noted that plaintiff was able to live with his children and wife throughout the period he alleges that he was disabled. (Tr. 18). In addition, the ALJ pointed out that plaintiff's treating sources described him as "polite and cooperative," "pleasant," and "calm and affable." (Tr. 18). The ALJ acknowledged that plaintiff exhibited anger, notably in certain work situations, but further noted that it was related to stress at work rather than being directly attributable to any clinical impairment. (Tr. 18). The Commissioner argues that based on the evidence as a whole, the ALJ reasonably found that plaintiff had moderate, as opposed to marked, limitations in this functional category.

The Commissioner notes that the ALJ also found that plaintiff had moderate

17

limitations in concentration, persistence, or pace.  In making this determination, the ALJ relied on plaintiff's report that he could pay attention "as long as I want." (Tr. 507).  The ALJ also noted that plaintiff was able to watch television and attend college with no reported difficulties related to concentration.  (Tr. 18). According to the Commissioner, plaintiff's reports are consistent with the statements to his doctor during an evaluation in 2005 in which he denied having any concentration problems.  (Tr. 734).  The ALJ also noted that plaintiff was able to perform multiple jobs concurrently between 2001 and 2003.  (Tr. 18).  The ALJ concluded that plaintiff demonstrated moderate limitations, but reasonably found there was no objective or medical opinion evidence to support a finding that he had "marked" limitations in this area.  (Tr. 18).

The Commissioner also argues that the ALJ's findings are consistent with, and even more restrictive than, the report prepared by Edward Czarnecki, Ph.D., a psychologist who reviewed plaintiff's record on behalf of the state agency.  Dr. Czarnecki concluded that plaintiff had only mild limitations in the paragraph B criteria and did not meet or medically equal a Listing.  (Tr. 98).  The Commissioner contends that Dr. Czarnecki's report is substantial evidence in support of the ALJ's step-three finding.

According to the Commissioner, plaintiff's objections to the ALJ's findings and contention that he had "marked" limitations in all of the paragraph B criteria

lack merit.  With respect to his daily activities, plaintiff stated that he lacked

motivation "to get off the couch," but the ALJ reasonably found that this

testimony was not fully credible because plaintiff was able to work several jobs

during the relevant period.  (Tr. 18).  Plaintiff suggests that the ALJ gave improper

weight to these jobs because they did not rise to the level of substantial gainful

activity.  However, the Commissioner argues, plaintiff has failed to cite any

authority that the ALJ erred by considering this evidence.  The Commissioner

contends that plaintiff's attempts to continue finding work contradict his testimony

that he was unable to leave his home.  (Tr. 1892).  Therefore, the Commissioner

concludes, the ALJ properly considered this evidence as it was inconsistent with

plaintiff's testimony.

The Commissioner notes that plaintiff also argues that the ALJ improperly

discounted his difficulties in social functioning because he found that plaintiff

"lived with his wife and two children."  Plaintiff contends that "it is unclear how

this fact would disprove problems with 'social functioning,'" but the

Commissioner argues that social functioning includes the ability to get along with

family members.  The Commissioner argues that plaintiff's ability to live and

interact with family members is evidence directly related to his abilities in social

functioning.  Notably, the Commissioner continues, the ALJ did not rely on this

evidence as the sole basis in finding that plaintiff had moderate limitations. The

ALJ also pointed out that plaintiff's treating physicians consistently noted that he was polite, cooperative, pleasant, calm, and affable. (Tr. 18). The Commissioner asserts that plaintiff suggests that this, too, was an error, but again failed to cite any authority indicating that the ALJ improperly considered plaintiff's treatment notes. According to the Commissioner, plaintiff's ability to interact in a social setting, including his ability to engage with his doctors in an appropriate manner, is evidence in support of the ALJ's finding. The Commissioner further asserts that plaintiff's argument that the ALJ must disprove plaintiff's limitations in social functioning represents a misunderstanding of the burdens of proof. The Commissioner explains that plaintiff has the burden of proving that he was disabled through step four of the sequential evaluation, as opposed to the ALJ "disproving" that plaintiff did not meet or equal a Listing at Step Three. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a).

Finally, with respect to his concentration problems, the Commissioner states that plaintiff argues that the ALJ placed too much emphasis on his testimony that he could pay attention "as long as" he wanted. (Tr. 18). The Commissioner asserts, however, that plaintiff failed to explain why the ALJ's reliance on his testimony constituted an error. Indeed, the Commissioner continues, plaintiff's suggestion that his statements are not to be believed indicates that his own testimony and reports are unreliable, and ultimately belies his claim that he was

20

disabled.  In support of his argument that he had greater limitations in

concentration than the ALJ found, plaintiff relies on reports dated after December

2005, when his insured status expired.  For example, plaintiff cites to reports from

April 2010 and Ms. Busch's January 2012 letter, but these records do not relate

back to the period under consideration.  The Commissioner argues that plaintiff

did not produce evidence contemporaneous to the period at issue that would

reflect that he had more than moderate problems with concentration while taking

college classes.  20 C.F.R. § 404.1512(c) ("You must provide evidence showing

how your impairment(s) affects your functioning during the time you say that you

are disabled, and any other information that we need to decide your case.").

Therefore, the Commissioner concludes, plaintiff has failed to demonstrate any

reversible error.  The Commissioner argues that plaintiff's objections to the ALJ's

Step-Three findings are nothing more than a disagreement with how the ALJ

weighed the evidence, and contends that here, the ALJ properly weighed

contradicting evidence in determining that plaintiff's impairments did not satisfy

the paragraph B criteria.  Therefore, the Commissioner concludes, plaintiff's

citation to isolated records and treatment notes from outside the relevant period

under consideration do not warrant a remand.  *See Longworth v. Comm'r of Soc.

Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the

Commissioner's decision, this Court will defer to that finding even if there is

substantial evidence in the record that would have supported an opposite

conclusion.").

The Commissioner further argues that the ALJ reasonably evaluated

plaintiff's credibility in determining plaintiff's RFC, and that an ALJ is not

obligated to accept a claimant's subjective allegations.  In assessing how much

weight to afford a claimant's allegations, an ALJ must review whether the

claimant's symptoms and limitations are supported by the medical and other

evidence.  20 C.F.R. § 404.1529(a).  An ALJ's finding concerning the credibility

of an applicant is entitled to great weight and deference.  *Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The Commissioner argues that the

ALJ found that plaintiff's treatment history did not support the extent of his

complaints.  The ALJ noted that although the record contained "voluminous

evidence of treatment for numerous impairments, there are significant gaps in

treatment. Specifically, there is no evidence of any treatment for any mental

impairments between the time of discharge from the military in December 1999

and May 2005." (Tr. 24). The ALJ acknowledged that plaintiff had a reported

suicide attempt in 1998, but there was no evidence of any mental impairment at

that time; rather, plaintiff's suicide attempt was attributed to outside stresses and

plaintiff continued to work in the Navy through December 1999.  (Tr. 24, citing

Tr. 561).  The ALJ also noted that plaintiff was non-compliant with his

22

medication.  (Tr. 24; *see also* Tr. 723).  20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").  The record indicated that when plaintiff began receiving mental health treatment, he stopped taking his prescribed anti-depressants, that plaintiff failed to follow-up with treatment after his initial psychiatric evaluation in August 2005, and that he continued to indicate that he did not want psychiatric treatment in December 2006.  (Tr. 704, 723).  The ALJ explained that "[t]his complete lack of treatment more than five years after the alleged onset of disability, which the claimant alleges is at least partially attributable to mental impairments, coupled with a subsequent failure to take medications as prescribed and failure to continue with treatment is not consistent with allegations of ongoing, disabling impairments since December 1999."  (Tr. 24).

The Commissioner contends that the ALJ also found that plaintiff's work history undermined his allegations.  Although plaintiff reported mental problems prior to 1999, the ALJ pointed out that plaintiff was able to work in the Navy as a cook until his discharge in December 1999.  (Tr. 25).  The ALJ noted that there was some indication that plaintiff left the Navy due to pressures associated with his family and financial difficulties, and not because of limitations caused by his alleged impairments.  (Tr. 22, citing Tr. 720).  The ALJ explained that "[t]he fact

that those multiple impairments did not prevent the claimant from working prior to December 1999, along with the indication that he left the Navy for reasons other than an inability to work due to his impairments, suggests that they would not have prevented him from working from January 2000 through December 2005." (Tr. 22). The ALJ further noted that plaintiff worked at several jobs during the period of his alleged disability (Tr. 22-23; *see also* Tr. 468 (plaintiff reported working in computer repairs and sales from May 2001 to September 2003, and also reported that he had been working in computer sales as early as July 2000)), and the Commissioner asserted that plaintiff also worked as a newspaper delivery person in July 2000 (Tr. 764), and that he reported to treatment professionals that he was working various jobs. (Tr. 444, 738, 746, 751). The ALJ further noted that plaintiff reported earnings that exceeded the monthly substantial gainful activity (SGA) threshold between 2006 and 2008, after his insured status expired, when he worked as a landscaping foreman and part-time football coach. (Tr. 23, citing Tr. 468). The ALJ explained, "[t]he fact that the claimant was able to work at two jobs for approximately two and one-half years at [substantial gainful activity] levels per claimant's own report indicates that his impairments were not as severe as he has alleged and tends to undermine his credibility with regard to his allegations of ongoing, disabling impairments since December 1999." (Tr. 23).

The Commissioner further notes that the ALJ pointed out that plaintiff began attending college on a full-time basis in October 2005 and was still attending college classes as late as September 2007.  (Tr. 23).  Plaintiff testified that he completed between 47 and 60 credits before stopping because he felt anxious attending class with other people.  (Tr. 73).  The Commissioner asserts that the ALJ acknowledged that plaintiff's mental impairments may have caused him to stop attending college, but that there was no objective evidence in the record that he was unable to attend class prior to December 2005.  (Tr. 23).

The Commissioner asserts that in addition to the evidence discussed above, the ALJ noted that the record did not contain any opinions from treating, examining, or consultative physicians indicating that plaintiff was disabled or had limitations greater than those identified in the ALJ's decision.  (Tr. 30).  The ALJ explained that the one low Global Assessment of Functioning ("GAF") assessment was entitled to little weight because it was provided by a social worker and was not consistent with her own objective findings.  (Tr. 30).  The Commissioner argues that, notably, the ALJ did not summarily reject plaintiff's claims. According to the Commissioner, the ALJ acknowledged that plaintiff had obvious work-related limitations and restricted him to unskilled work with only one-,two-, or three-step tasks, only occasional work in close proximity with co-workers and supervisors (but not as a member of a team), less than occasional direct contact

with the public, and a low-stress environment.  (Tr. 19, 30-31).  The

Commissioner asserts that the ALJ reasonably found that the evidence did not

support greater limitations, and the ALJ's decision demonstrates that he properly

evaluated plaintiff's credibility and provided specific reasons for his finding that

plaintiff was not fully credible. The Commissioner argues that while plaintiff may

disagree with the ALJ's credibility assessment, he has failed to demonstrate a basis

for overturning the finding, especially in light of the great weight and deference

that an ALJ's credibility finding is entitled to on review. The Commissioner

concludes that because the ALJ's credibility finding is supported by substantial

evidence, it should not be disturbed.  The Commissioner asserts that substantial

evidence supports the ALJ's decision and therefore requests that this Court affirm

the Commissioner's decision.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

27

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

28

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that

"significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the

31

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.   Analysis and Conclusions

#### 1.   The ALJ's Step Three finding that plaintiff did not meet or medically equal a Listing is supported by substantial evidence

Plaintiff claims that the ALJ erred in failing to find that his impairments

meet or medically equal Listings 12.04 (Affective Disorder) and/or 12.06 (Anxiety

Related Disorder).  At step three of the disability evaluation process, the

Commissioner must consider whether a claimant's impairments meet or equal any

of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1.  20

C.F.R. § 404.1520(a).  An impairment that meets only some of the medical criteria

and not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S.

521, 530 (1990).  Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled, and entitled to benefits.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r of Soc. Sec.*, 34 Fed. Appx. 202, 203 (6th Cir. 2002).  The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  An impairment or combination of impairments is considered medically equivalent to a listed impairment ". . . if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments."  *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).

In order to meet either Listing 12.04 or Listing 12.06, plaintiff must show that he satisfies the criteria in both Paragraphs A and B of those listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  The A criteria consist of clinical findings which medically substantiate a mental disorder.  To satisfy the B requirements of Listings 12.04 and 12.06, plaintiff must establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *Id.*  Alternatively, under Listing

12.04 or 12.06, a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing.  The "C" criteria for Listing 12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  For Listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.  Plaintiff does not argue that he satisfies the "C" criteria of either Listing.

Rather, plaintiff argues that he satisfied the paragraph B requirements of both Listing 12.04 and/or 12.06, in that he asserts he had "marked" restriction of activities of daily living, "marked" difficulties in maintaining social functioning, and "marked" difficulties in maintaining concentration, persistence or pace.[2]  As

---

[2]The term "marked" is defined in the regulations as "more than moderate but less than extreme."  20 C.F.R. Part 404, Subpt. P, App. 1).  The regulations go on to provide that "[a] marked limitation may arise when several activities or functions are impaired, or even when only

explained above, plaintiff has the burden at Step Three of the sequential analysis

of putting forth evidence establishing that he meets or equals a listing.  It is

therefore incumbent upon plaintiff to put forth medical evidence establishing that

he meets all of the requirements of Listings 12.04 and 12.06 to meet his burden.

*See Sullivan*, 493 U.S. at 530-32.  However, as explained below, the undersigned

concludes that plaintiff has failed to identify any medical evidence supporting a

finding that he meets the criteria of either Listing 12.04 or 12.06.

 First, with regard to activities of daily living, the ALJ found:

> In activities of daily living, the claimant had mild restriction.  The claimant did not receive any treatment for any mental impairment after the alleged onset of disability, until May 2005.  During that time, he was able to work at several jobs and was able to assist in raising two young sons.  Although there is some evidence of frequent outbursts of anger in May 2005, those were at least partially attributable (per the claimant) to his recent loss of a job.  (Ex. 3F, Pg. 60).  Additionally, although the claimant alleged that he spent much of his time prior to December 2005 either lying in bed or occasionally watching television (testimony), these allegations are not credible based on the record, as discussed below, which documents regular work activity over extended periods and includes no objective findings or medical opinions to support this degree of isolation and depression.  In summary, there are no objective findings or medical opinions to indicate that the claimant's mental impairments caused more than mild limitations in this area prior to January 1, 2006.

---

one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

(Tr. 18).  "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(C)(1).  According to plaintiff's Function Report, he could care for himself and help care for his two young children and pets, prepare simple meals, do some chores such as dishes and light vacuuming, shop, pay bills and handle a savings account.  (Tr. 502-09).  In his motion, plaintiff relies solely on his testimony and his subjective statements to a social worker and psychiatrist as the bases for asserting he has "marked" limitations in this area (Dkt. 16 at p. 14, citing Tr. 72 (testimony), 719 (plaintiff's "reports" to psychiatrist), and 1892 (plaintiff's statements to social worker intern)), but fails to cite any objective medical evidence in support of this claim.  As discussed further *infra*, the ALJ's decision to discount plaintiff's subjective testimony as partially credible is supported by substantial evidence.

Plaintiff faults the ALJ for considering that plaintiff worked several jobs during the relevant period in support of the finding of mild limitations in activities of daily living.  Plaintiff here does not dispute that he continued to work after the alleged onset date in 1999, but instead argues that his attempts to work should not be counted against him.  Plaintiff's argument is unpersuasive.  It is well-settled

36

that "[i]n evaluating a claimant's impairments, and their impact on daily activities, an ALJ may consider the claimant's ability to work in the past notwithstanding them." *See Johnson v. Comm'r of Soc. Sec.*, 2011 WL 1627946, at *7 (E.D. Mich. Mar. 31, 2007) (citing *Swann v. Chater*, 1996 WL 408508, at *5 (6th Cir. July 19, 1996) ("Claimant's ability to work despite these physiological conditions militates against his claim that these conditions were disabling.")), *adopted by* 2011 WL 1629664 (E.D. Mich. Apr. 29, 2011).  "Any work done during a period of claimed disability may show a claimant can engage in substantial gainful activity." *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) (citing 20 C.F.R. §§ 404.1571, 404.1520); *see also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1029 (6th Cir. 1990) (same).  As the regulations provide, "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. . . ."  20 C.F.R. § 1571; *see also* 20 C.F.R. § 404.1512(b) (listing "your efforts at work" as relevant evidence for consideration); *Ashworth v. Sullivan*, 1991 WL 278961 (6th Cir. Dec. 30, 1991) (noting the ALJ properly considered the claimant's part-time work, even though it did not qualify as "substantial gainful activity").  Thus, "[t]here is nothing inconsistent with finding that [plaintiff's] work did not amount to substantial gainful activity, but nevertheless considering it relevant in evaluating his credibility and RFC." *See Norris v. Astrue*, 2011 WL 588349, at *5 (E.D. Ky. Feb. 10, 2011) (citing 20

C.F.R. §§ 404.1571 and 404.1512(b)), *aff'd*, 461 Fed. Appx. 433 (6th Cir. 2012); *see also Fenner v. Comm'r of Soc. Sec.*, 2013 WL 2253573, at *6 (S.D. Ohio May 22, 2013) (finding the ALJ properly considered plaintiff's employment history after his alleged disability onset date, even if it was an unsuccessful work attempt), *adopted by* 2013 WL 3168645 (S.D. Ohio June 20, 2013); *Raber v. Comm'r of Soc. Sec.*, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (plaintiff's reported multiple part-time jobs during the time she alleged she was disabled were relevant to show that she was able to do more work, even if the work was not considered substantial gainful activity). Accordingly, the undersigned suggests that the ALJ properly considered plaintiff's work history and reasonably found mild limitations on plaintiff's activities of daily living.

Regarding social functioning, the ALJ found:

> In social functioning, the claimant had moderate difficulties. Although there is some evidence of physical abuse in 2005 (Ex. 3F), the record indicates that the claimant lived with his wife and two children for the entire period from December 1999 through December 2005. Furthermore, the claimant was described as "polite and cooperative" (Ex. 3F, pg. 56, 61 & 66), "pleasant" (Ex. 3F, pg. 44) and "calm and affable" (Ex. 3F, pg. 48) by his treating professionals. Although, they each noted some degree of anxiousness, there is no objective or medical opinion evidence in the record to indicate more than a moderate limitation in this area prior to January 1, 2006. Furthermore, much of the anger reported by the claimant appears to have been related to stresses as a result of pressure to work (Ex. 3F,

pg. 46) and feelings of inadequacy due to his inability to
support his family (Ex. 3F, pg. 44 & 60), rather than
being directly attributable to any clinical impairment.

(Tr. 18).  "Social functioning refers to your capacity to interact independently,

appropriately, effectively, and on a sustained basis with other individuals.  Social

functioning includes the ability to get along with others, such as family members,

friends, neighbors, grocery clerks, landlords, or bus drivers."  20 C.F.R. Pt. 404,

Subpt. P, App. 1, Listing 12.00(C)(2).  Plaintiff argues the ALJ improperly

discounted his difficulties in social functioning because he found plaintiff "lived

with his wife and two children for the entire period from December 1999 through

December 2005."  However, social functioning "includes the ability to get along

with others, such as family members[,]" and the undersigned suggests that the ALJ

properly considered plaintiff's ability to interact with his family members as

related to plaintiff's abilities in social functioning.  Similarly, the ALJ properly

relied on medical source statements assessing plaintiff as "polite and cooperative,"

"pleasant," and "calm and affable" as supporting his paragraph B determination.

Plaintiff does not contend that the ALJ improperly cited plaintiff's treatment notes

in making these findings, but instead argues those findings should be disregarded

because they were made in "a formal medical setting."  However, as the

Commissioner points out, plaintiff's ability to interact in a social setting can

certainly include his ability to engage with his treaters in an appropriate manner,

39

and thus the ALJ reasonably relied on these findings as support for his decision that plaintiff had moderate difficulties in social functioning. Further, the ALJ acknowledged that plaintiff reported anger as part of his finding that plaintiff had moderate difficulties in social functioning, but noted that the anger appears to be related to stresses as a result of pressure to work rather than being attributable to any clinical impairment. (Tr. 16). Tellingly, the ALJ also cited the lack of objective or medical opinion evidence in the record to indicate more than a moderate limitation in this area. Thus, the ALJ's finding here is supported by substantial evidence.

Finally, with regard to concentration, persistence or pace, the ALJ found:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported that he is able to pay attention "as long as I want." (Ex. 8E, pg. 6). Additionally, the record indicates that he likes to watch television (Ex. 6E & 8E) and was able to attend college with no reported difficulties related to concentration, persistence or pace (testimony). Furthermore, he was able to perform multiple jobs at the same time from 2001 to 2003. Lastly, the claimant denied having any problems in this area during psychiatric evaluations in 2005 (Ex. 3F, pg. 61). In sum, there is no objective or medical opinion evidence to support a finding that the claimant had "marked" limitations in this area.

(Tr. 18). Plaintiff contends that the ALJ erred in relying on plaintiff's statement in his Function Report completed in 2011 that he can pay attention "as long as I

want," suggesting that his own testimony and reports are unreliable because of his "memory problems, head injury, residuals of his PTSD, etc." and that the ALJ should have instead relied on plaintiff's abilities as described by his wife. (Dkt. 16, p. 19). However, as the Commissioner aptly argued, "[p]laintiff's suggestion that his statements are not to be believed indicates that his own testimony and reports are unreliable, and ultimately belies his claim that he was disabled." (Dkt. 19, p. 11). Further, the ALJ also supported his finding by noting that plaintiff was able to perform multiple jobs during the relevant time period and noting that plaintiff denied having any problems in this area during psychiatric evaluations in 2005. (Tr. 18, citing Tr. 734). Moreover, the ALJ specifically addressed the Function Report completed by plaintiff's wife and concluded that this report was entitled to little weight because it is not supported by any objectively verifiable findings and was "likely at least somewhat influenced by the gradual increase in symptoms and recent procedures and are therefore not entirely reflective of the claimant's true functional abilities prior to December 2005." (Tr. 21).

Addressing the ALJ's finding that plaintiff was able to attend college with no reported difficulties in concentration, plaintiff relies on a report from April 2010 and a January 2012 letter in support of his argument that he had greater limitations in concentration than the ALJ found. (Dkt. 16, citing Tr. 529, 1147, 1156). However, in order for evidence of the plaintiff's condition after the date

last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 478, 480 (6th Cir. 2003).  If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled.  *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).[3] Therefore, the ALJ generally only considers evidence from the alleged disability onset date through the date last insured.  *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990).  "Evidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004).  Here, much of the record evidence post-dates plaintiff's date last insured.  Hence, this evidence is relevant only to the extent it sheds light on plaintiff's condition prior to his date last insured.  *See King*, 896 F.2d at 205-06.  Plaintiff fails to establish that these 2010 and 2012 reports shed light on plaintiff's condition prior to his date last insured. Although the January 2012 letters refers to findings in April 2005, September 2006 and July 2010, the ALJ expressly addressed this letter and Ms. Busch's

---

[3]It is well-settled that, in order to be eligible for disability insurance benefits, a person must become disabled during the period in which he has met the statutory special earnings requirements.  42 U.S.C. §§ 416(i)(2)(c); 423(a), (c-d).  "If a claimant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured."  *Renfro v. Barnhart*, 30 Fed. Appx. 431, 435 (6th Cir. 2002).

earlier findings in his decision.  (Tr. 29).  The ALJ noted that Ms. Busch indicated in April 2005 that she was hopeful plaintiff could be vocationally rehabilitated, and then opined over five years later, based on the actions of plaintiff during the intervening years, that he cannot be rehabilitated in the workforce.  (Tr. 29).  The ALJ gave Ms. Busch's 2005 opinion significant weight because it was consistent with the objective and opinion evidence in the record.  (*Id.*).  The ALJ found, however, that Ms. Busch's 2010 and 2012 opinions "cannot be used to support a finding of disability for the period ending December 31, 2005, because it is based almost solely on the claimant's actions and medical record for the period after December 31, 2005, with no objective indication that such limitations were present during the period pertinent to this decision."  (Tr. 29).[4]  The undersigned suggests the ALJ's finding is supported by substantial evidence.  *See Strong*, 88 Fed. Appx. at 845.

Finally, in order to show that an unlisted impairment or combination of

---

[4]The ALJ further detailed the various findings by the Department of Veterans Affairs in the record and acknowledged that plaintiff was found partially disabled by the VA and is currently receiving disability payments from that agency.  (Tr. 27).  However, as the ALJ properly recognized, because the Social Security Administration makes determinations of disability according to Social Security rules and regulations, a determination of disability by another agency is not binding.  (*Id.*).  Accordingly, the ALJ considered the VA's disability determinations but gave the findings of the VA regarding plaintiff's disability percentage little weight.  (*Id.*).  The undersigned concludes that the ALJ properly considered the VA findings in rendering his decision.  *See King v. Comm'r of Soc. Sec.*, 779 F. Supp.2d 721, 725-26 (E.D. Mich. 2011) (recognizing the VA decision as "simply another fact that the ALJ must take into account when considering all the evidence" and that the ALJ must explain his reasons for crediting or rejecting the evidence).

impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531. It is not enough for plaintiff to show that the overall functional impact of his impairment is as severe as that of an impairment in the Listings. *Id.* Here, plaintiff fails to explain how the medical evidence shows that he medically equals either Listing and the undersigned finds no reason to disturb the ALJ's allegations. The substantial evidence standard presupposes that there is a zone of choice within which the ALJ can make a decision without interference by the courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld. The undersigned suggests that substantial evidence supports the ALJ's finding that plaintiff's impairments did not satisfy the paragraph B criteria, as the ALJ provided a thorough, reasoned explanation for the basis of his findings and cited to relevant evidence contained in the record. Accordingly, plaintiff's first claim of error should be denied.

## 2.   The ALJ's credibility assessment is supported by substantial evidence

Plaintiff contends that the ALJ failed to adequately assess his credibility concerning the intensity and persistence of his symptoms associated with his mental health problems.  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a).  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004).

"It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying."  *Jones*, 336 F.3d at 476.  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  However, an ALJ who rejects a

claimant's testimony must "clearly state" the reasoning for doing so.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (an ALJ's credibility determination regarding subjective complaints must be reasonable and supported by substantial evidence).  "[W]here an ALJ's reasoning underlying his decision to discount a claimant's credibility is partially but not fully flawed, remand may nonetheless be appropriate."  *Kerr v. Comm'r of Soc. Sec.*, 2013 WL 388987, at *16 (E.D. Mich. 2013) (citing *Allan v. Comm'r of Soc. Sec.*, 2011 WL 2670021 (E.D. Mich. 2011) citing *Ford v. Astrue*, 518 F.3d 979, 982-83 (8th Cir. 2008)), *adopted by* 2013 WL 388176 (E.D. Mich. 2013).  The Sixth Circuit has stated that courts are "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant] are reasonable and supported by substantial evidence in the record."  *Jones*, 336 F.3d at 476; *see also Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact").

In this case, the ALJ's credibility determination is thorough, detailed, and amply supported by the record.  The ALJ thoroughly reviewed the record evidence in his decision, including summarizing plaintiff's hearing testimony and extensively summarizing the objective record and medical evidence.  (Tr. 20-31). The ALJ found that plaintiff's treatment history did not support the extent of his

46

claimed limitations, noting that although the record contained "voluminous evidence of treatment for numerous impairments, there are significant gaps in treatment." (Tr. 24). The ALJ noted that "there is no evidence of any treatment for any mental impairments between the time of discharge from the military in December 1999 and May 2005[,]" and "[l]ikewise, there is no evidence of any treatment for any physical impairments between July 2002 (ultrasound due to hernia pain) and May 2005 (complaints of back pain)." (*Id.*). The ALJ found that these lapses in treatment are "not consistent with the claimant's allegations of disabling impairments since December 1999 " and that this "tends to undermine his credibility." (*Id.*). The ALJ further found that plaintiff's work history, both before and after his date last insured, undermined his allegations of disabling impairments (Tr. 22-23), noted plaintiff's statements to his treating physicians (i.e., an ability to run two miles daily and wrestle with his children) as inconsistent with his claimed limitations, (Tr. 24), and that the record does not contain any opinions from treating, examining or consultative physicians indicating that plaintiff was disabled or even has limitations greater than those determined in this decision. As the Commissioner points out, the ALJ did not summarily reject plaintiff's claims, but rather acknowledged that plaintiff had multiple severe impairments and accommodated plaintiff's work-related limitations in his RFC determination. The undersigned suggests that the ALJ's credibility determination

was reasonable and supported by substantial evidence.

Plaintiff argues that it is inconsistent for the ALJ to, on the one hand, discredit plaintiff's statements in his 2011 Function Report, concerning his recollections of his functional problems prior to his date last insured, while at the same time crediting plaintiff with accuracy for the jobs he described at various times. However, the ALJ did not wholly discredit plaintiff's statements in his 2011 Function Report, but rather explained that he found the 2011 Function Reports prepared by plaintiff and his wife relevant to the issue of disability for the period prior to December 2005, but that the statements were "at least somewhat influenced by the gradual increase in symptoms and recent procedures [including a surgery] and are therefore not entirely reflective of the claimant's true functional abilities prior to December 2005." (Tr. 21). And, plaintiff does not dispute that he worked the jobs identified by the ALJ, but only that those work attempts constituted substantial gainful activity. The ALJ similarly agreed that while the work from 2001 to 2003 was performed at SGA levels "*based on the claimant's self-reported income*," because this information "*may or may not be entirely accurate,*" the ALJ proceeded in the disability analysis "as if there were no SGA earnings." (Tr. 17). And, as explained *supra*, "[t]here is nothing inconsistent with finding that [plaintiff's] work did not amount to substantial gainful activity, but nevertheless considering it relevant in evaluating his credibility and RFC."

48

*Norris*, 2011 WL 588349; at *5.

As stated above, the ALJ also noted in his decision that there is "no evidence of any treatment for any mental impairment between the time of discharge from the military in December 1999 and May 2005" (Tr. 24), which the plaintiff concedes is accurate.  Plaintiff argued that the ALJ erred, however, in faulting plaintiff with not having followed through with prescribed psychiatric treatment after his 2005 assessments, citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  However, the ALJ also noted that, in addition to the lack of treatment before May 2005, and the failure to follow through with subsequent treatment, plaintiff also stopped taking his anti-depressants and continued to indicate that he did not want psychiatric treatment in December 2006.  (Tr. 24).  The ALJ found that "[t]his complete lack of treatment more than five years after the alleged onset of disability, which the claimant alleges is at least partially attributable to mental impairments, coupled with the subsequent failure to take medications as prescribed and failure to continue with treatment is not consistent with the allegations of ongoing, disabling impairments since December 1999." (Tr. 24).  While it indeed may be a "questionable practice to chastise one with mental impairment for exercise of poor judgment in seeking rehabilitation," *Blankenship* expressly states that the lack of medical treatment should not be a "determinative factor" when assessing the claimant's credibility.  *Blankenship*,

874 F.2d at 1124.  Here, the ALJ not only observed that plaintiff had failed to seek psychiatric treatment, he also noted that the lack of treatment for any physical impairments for almost two and one-half years, that plaintiff was able to work two jobs for approximately two and one-half years and later attended college on a full-time basis, and that the record does not contain any opinions from treating, examining or consultative physicians indicating that plaintiff was disabled or even had limitations greater than those determined in the decision.  Accordingly, plaintiff's lack of mental health treatment was not a "determinative factor" in assessing plaintiff's credibility, but was properly considered by the ALJ.  *See England v. Comm'r of Soc. Sec.*, 2013 WL 1150718, at *4 *(E.D. Tenn. Mar. 19, 2013) (distinguishing *Blankenship* and finding "Plaintiff was not being penalized for not seeking mental health treatment" because other valid reasons exist to disbelieve plaintiff's statements, "but the lack of a record 'cast doubt on the severity of her symptoms as reported to Ms. Ramey'").  Therefore, taken together, the undersigned concludes that the ALJ's credibility decision is supported by substantial evidence.  Accordingly, plaintiff's claim of error should be denied.

### 3.  The ALJ's RFC finding is supported by substantial evidence

Plaintiff argues that the ALJ erred in incorporating plaintiff's testimony that he was able to stand, walk and/or sit "for only 15 minutes at one time" in the RFC,

50

while failing to also incorporate the further limitation in plaintiff's testimony that he then had to "go and lay down, take the pressure off . . . ." (Tr. 66). This is essentially a continuation of plaintiff's credibility argument. The ALJ acknowledged that plaintiff testified as to the need to lie down, but found plaintiff's statements only partially credible, based on his review of the entire record. (Tr. 21-22). It is the ALJ's ultimate duty to determine a claimant's RFC based on the entire record, 20 C.F.R. §416.946(c), and "it is well-established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). It is also the ALJ's duty–not the Court's–to resolve conflicts in the record. *See, e.g.*, *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ here thoroughly discussed the medical and non-medical evidence in reaching his RFC determination, and noted that no treating, consulting or examining physician opined that plaintiff is disabled or even has limitations greater than those determined by the ALJ. That RFC determination–including the decision to partially discredit plaintiff's testimony as to the need to lie down–was supported by substantial evidence.

Plaintiff also argues that the ALJ erred in giving "significant weight" to the opinion of the State agency reviewing physician, Dr. Edmunds, who did not

examine or treat plaintiff. Plaintiff asserts that the ALJ's assertion that Dr.

Edmunds was "able to review the claimant's entire medical record . . ." (Tr. 30), is

incorrect as newly submitted evidence was filed just one day before the hearing,

and thus Dr. Edmunds did not have plaintiff's "entire medical record" from which

to formulate an opinion. The undersigned first notes that State agency doctors are

"highly qualified physicians and psychologists who are experts in the evaluation

of the medical issues in disability claims under the Act." *See* 20 C.F.R.

§ 404.1527(e)(2)(I). Dr. Edmunds completed the physical residual functional

capacity assessment of plaintiff on May 31, 2011 based on his review of the record

evidence. (Tr. 99-100). The ALJ gave Dr. Edmunds' opinion significant weight

because he was able to review plaintiff's medical record "and his opinion is

generally consistent with the objective evidence contained therein." (Tr. 30).

Plaintiff fails to explain what evidence or records were not reviewed by Dr.

Edmunds, or, more importantly, how those records contained findings inconsistent

with Dr. Edmunds' opinion that plaintiff could perform a limited category of light

work. Accordingly, plaintiff has failed to show that the ALJ's RFC assessment is

not supported by substantial evidence, and his claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the decision of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

53

No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 14, 2014                         s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 14, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Eva I. Guerra, Derri T. Thomas, Niranjan Emami and the Commissioner of Social Security.

                                                s/Tammy Hallwood
                                                Case Manager
                                                (810) 341-7850
                                                tammy_hallwood@mied.uscourts.gov